IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MERCEDES U.[1]                                      )
                                                    )
                     Plaintiff,                     )
                                                    )
vs.                                                 )     Civil No. 24-cv-2656-RJD[2]
                                                    )
COMMISSIONER OF SOCIAL SECURITY,                    )
                                                    )
                     Defendant.                     )
                                                    )

**MEMORANDUM and ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 423.

**Procedural History**

On May 18, 2022, Plaintiff protectively filed applications for DIB and SSI, claiming that a broken left ankle, back pain, bipolar disorder, and anxiety had disabled her since April 2022. Tr. 87, 98, 253. After a video hearing held on April 22, 2024, Administrative Law Judge ("ALJ") Stuart Janney issued an unfavorable decision on June 1, 2024. Tr. 12-40. The ALJ's June 2024 decision denying the claims became final and appealable in October 2024, when the Appeals Council declined Plaintiff's request for review. Tr. 12, 1. *See* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481 (describing effect of Appeals Council's denial of review).

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). (Doc. 9).

Page **1** of **21**

**Issues Raised by Plaintiff**

Plaintiff raises the following issues:

1. Whether the ALJ's Step Five finding is not supported by substantial evidence, where the ALJ failed to incorporate adequate limitations in his RFC and improperly discounted the impact of the claimant's documented panic/anxiety attacks and related symptomology on her ability to maintain persistence or pace.

2. Whether the ALJ improperly assessed the opinions where he failed to consider the impact of evidence not considered by the state agency, and when he relied solely on his own incorrect layperson's opinion to discount opinions from the state agency and from SSA's own examining consultants.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statute.[3] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. Pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. Pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Importantly, the Court's scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*,  587 U.S. 97, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but the Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2023. Tr. 18. He found that Plaintiff had not engaged in any substantial gainful activity since April 30, 2022, the alleged onset. Tr. 18. He also found that Plaintiff had the following severe impairments: left ankle fracture; unspecified depressive disorder; major depressive disorder; bipolar disorder; generalized anxiety disorder; social anxiety disorder; panic attacks; post-traumatic stress disorder; and obesity. Tr. 18. Non-medically determinable impairments included headache disorder because headaches were tension headaches and not clearly migrainous. Tr. 18-19. The ALJ further found that Plaintiff had moderate limitations in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. Tr. 21-22.

While the ALJ did not conclude that any of these conditions met or equaled a listed impairment, he did find that they limited Plaintiff's abilities. Tr. 21-22. Specifically, the ALJ found that Plaintiff retained the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry (including upward pulling) 20 pounds occasionally and 10 pounds frequently. She can push and/or pull 20 pounds occasionally and 10 pounds frequently with the upper and lower extremities. She can stand and/or walk (with normal breaks) for a total of six hours in an eight-hour workday. She can sit (with normal breaks) for a total of six hours in an eight-hour workday. She can frequently climb ladders, ropes, and scaffolds. She can frequently balance, kneel, crouch, and crawl. She can understand, carry out, make judgments regarding, and remember simple instructions. She can respond appropriately to supervision and coworkers. She can tolerate occasional interactions with the public and can respond appropriately during the interactions. She can deal with occasional changes in a routine work setting.

Tr. 21-22. The ALJ then found that Plaintiff would be able to perform work of representative

occupations such as a packer, sorter, and inspector. Tr. 33-34.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

1. **Agency Forms**

Plaintiff submitted an Adult Function Report dated December 30, 2022, reporting that she was unable to work because she gets upset easily and breaks down, accomplishing nothing. Tr. 292. She indicated that sometimes she did not get up in the mornings and that when she did, she seemed to just sit around and be depressed. Tr. 297. She reported that she had gained several pounds in the previous few months because she did not want to be around anyone. *Id.* The claimant noted that she could hardly pick up anything due to back pain and that most personal care tasks caused her pain. *Id.* She reported that she required reminders to take care of personal needs and grooming and to take medication, that she sometimes prepared her own meals, and that she could perform household chores, though she needed help or encouragement to do so. Tr. 298. She indicated that she only went outside when she had to, as she is afraid someone may talk to her. Tr. 299. She further reported she could drive, but that she was unable to go out alone because of fears that she might get upset and harm herself. She reported that she shopped for food by phone and was able to manage money. *Id.*

Plaintiff reported that her hobbies and interests were watching television and sleeping, and that she talks on the phone and texts her dad and friends every few days, crying to them a lot. Tr. 300. Her anger and depression cause problems in getting along with other people, and she does

not engage in social activities. *Id.*

Plaintiff indicated problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and climbing stairs due to pain, and that she had problems with her memory, concentration, and ability to complete tasks and get along with others due to her mental health conditions. Tr. 301. She was not able to walk far due to pain, could sometimes finish what she started, could sometimes follow written instructions, noting that it sometimes takes her longer than other times, and that she could follow spoken instructions pretty well, but that she usually wrote them down. She indicated she could get along with authority figures "ok," but that she tried to stay out of the way. Tr. 301. She stated that she had been let go from all her previous jobs due to being unable to do the work. *Id.* She reported that she does not handle stress and does not like change at all. Tr. 302. She indicated that she cried a lot and always had. Tr. 302. She reported the prescribed use of glasses, but no other assistive devices. *Id.*

Plaintiff also submitted a subsequent Adult Function Report wherein she noted she was unable to work because she could not concentrate, that she got anxiety, that she could not stand or walk long, that she got panic attacks and freaked out, and that she had trouble using her hands for more than 10 minutes. Tr. 325. She made similar allegations regarding her functioning as in her prior report, but specifically noted that she could walk for five feet before needing to rest and could usually pay attention for five minutes. Tr. 330. She also reported that she was using a wheelchair that had been prescribed by a doctor after she had hurt her foot. Tr. 331.

Plaintiff also submitted an undated note stating that she had suffered from mental illness and anxiety for as long as she could remember, had engaged in self-harm as a teenager, and had a difficult childhood, including removal from her biological parents at three when she was found

raising her brother. Tr. 371. She alleged that she freaked out in public, had difficulty breathing, and would shake, and that she did not like leaving her house at all. *Id.* She reported being forgetful and confused. Tr. 372

Plaintiff's father, Alfred Abbott, submitted two Third Party Adult Function Reports in December 2022 and July 2023, as well as a letter, reporting functional limitations substantially aligned with Plaintiff's reports. Tr. 272-283, 313-324, 367. The claimant's grandmother and a family friend also submitted letters regarding Plaintiff's anxiety attacks. Tr. 366, 369.

## 2. **Plaintiff's Testimony**

Plaintiff testified telephonically at a hearing before the ALJ. Tr. 42-76. Plaintiff testified that she still had hardware in her left ankle and foot and had pain at that site. Tr. 53-54. She used heat, ice, and elevation to treat the pain. Tr. 54. If she stood or walked too long, she had swelling and stabbing pain. Tr. 54. Plaintiff further testified that she could stand for about 10 minutes before needing to sit or lie down. She could walk up to 20 minutes, which would be "pushing it." Tr. 55. If she had to sit upright and could not elevate her left foot, she could do so for three to five minutes before needing to move. Tr. 63. If she could elevate the foot to stool height, she could do so for five to seven minutes. Tr. 63.

Plaintiff also testified that she became really overwhelmed and angry for no reason. Tr. 58-59. She cried for no reason. Two or three times a week, she stayed in bed due to mental health symptomology; sometimes she stayed in bed all day. Her medication allowed her to breathe a little more, to be less shaky, and to have more good days than bad. Tr. 60. She became frustrated or had anxiety when trying to do too much or if something was too hard. Tr. 61. She had trouble concentrating. She missed a lot or did not pay attention. Tr. 63. She could watch something for

about 10 minutes before zoning out, not paying attention, or starting to do something else. Tr. 63-64. Plaintiff further testified that when she took her kids to a trampoline park in July 2022, it was with her mother, and she experienced really bad anxiety. She had to go back to her van because there were too many people. Tr. 62-63. She also testified that if stressed, she would have a panic attack lasting three to five minutes or up to 30 minutes. Tr. 64.

### 3.  Vocational Expert's Testimony

In response to a question about a hypothetical reflecting the ALJ's RFC finding, vocational expert Diane Regan testified that the individual would be unable to perform Plaintiff's past jobs as actually or generally performed but could perform other light, unskilled jobs. Tr. 71. At the sedentary level, the vocational expert indicated that 80,000 jobs comported with the hypothetical. If the individual also had to elevate the lower extremity to waist level while seated, there would be no competitive employment. If the hypothetical individual were off task for 20 percent of the workday due to pain, drowsiness from medication, or mental health symptoms, there would be no competitive employment. Tr. 72.

### 4.  Relevant Medical Records

Plaintiff has been diagnosed with anxiety, depression, and bipolar disorder. Tr. 886. She reported to her providers racing thoughts, excessive worry, difficulty concentrating, memory deficits, mood swings, irritability, anger management issues, social anxiety, and frequent panic attacks occurring as often as four times per week. Tr. 3541-51, 3718-29, 3636-40, 3713-17. On October 16, 2018, Dr. Thomas-Stagg, who conducted a consultative mental health examination of Plaintiff, observed Plaintiff becoming upset and crying. Tr. 381-84. In June 2023 and February 2024, Nurse Practitioner Goods observed three times that Plaintiff was labile, anxious, and

depressed. Tr. 3583, 3632, 3638.

On March 23, 2023, at a consultative psychological evaluation, Dr. Elmudesi noted that Plaintiff had a genuine demeanor and appropriate appearance, did not appear to present with any active psychotic signs or symptoms, and her affect and mood were "somber to superficially bright." Tr. 681. On June 1, 2023, at an initial evaluation with Mindful Care, her mental status examination was normal, with full affect and euthymic mood. Tr. 3718-19. On August 21, 2023, Plaintiff reported that her mood was good, rated her depression as a 3/10, rated her anxiety as a 5-6/10, and was performing activities of daily living without difficulty. Tr. 3691. On April 24, 2024, despite reporting being "very irritable" and "on edge," her mental status examination showed Plaintiff to be neat, appropriately dressed, with acceptable hygiene, cooperative, friendly, with a normal mood and full affect, and with no noted mental status abnormalities. Tr. 3819.

On March 26, 2021, Plaintiff was diagnosed with "frequent headaches," with her provider noting the same to not clearly be migraines and suspecting them to be tension headaches. Tr. 18, 704, 706. On March 24, 2022, and on July 12, 2022, Plaintiff reported to her physical therapist an increased frequency of headaches to 1-2 times per week. Tr. 506, 33.

As to her physical limitations, Plaintiff fell and broke her left ankle in April 2022. Tr. 2542-43, 2548-57, 2580-88. She underwent an open reduction and internal fixation surgery in May of 2022, Tr. 445-47, but she continued to exhibit decreased strength and range of motion and suffer pain that radiates from her left foot up to her knee. Tr. 3558-3560. In September 2023, a second surgery for the removal of Plaintiff's hardware was set to be scheduled. Tr. 2559.

### 5. <u>Medical Opinions</u>

Jonathan Thomas-Stagg, Ph.D., conducted a consultative mental status examination of Plaintiff on October 16, 2018, and noted diagnostic impressions of PTSD and unspecified depressive disorder. Tr. 31, 381-85. The ALJ concluded that, while Dr. Stagg noted that Plaintiff's effort and persistence to achieve normal results on her mental status examination "was significant," he did not provide an opinion regarding the claimant's mental ability to perform work to which persuasive value can be assigned. *Id.*

Frank J. Elmudesi, Psy.D., conducted a consultative psychological evaluation of Plaintiff on March 23, 2023, and noted diagnostic impressions of bipolar disorder not otherwise specified, possible sub-average intellectual functioning and/or learning disability, social anxiety disorder, possible personality disorder, and medical issues. Tr. 31; 680-82. Dr. Elmudesi noted that Plaintiff would likely be able to manage benefits with assistance. *Id.* The ALJ found that Dr. Elmudesi did not provide an opinion regarding Plaintiff's mental ability to perform work to which persuasive value can be assigned. *Id.*

On March 26, 2023, in his application of the psychiatric review technique, psychological consultant David Voss, Ph.D., found that the claimant had moderate limitation in each of the "paragraph B" criteria. Tr. 32, 78, 90. He further found that the claimant could understand and remember simple but not detailed or complex instructions, had the concentration and ability to carry out simple tasks requiring routine judgment (*e.g.*, few variables, assembly work), would require a simple, direct supervision for routine work tasks, was capable of being punctual and maintaining a routine work schedule, and could sustain the persistence and pace for such tasks as ordinarily expected in a common work setting over a workday with customary breaks. Tr. 32, 83-

84, 94-95. He found that the claimant had the capacity for interactions with supervisors and coworkers in a work environment where social interaction is incidental to the work performed, and could work in settings involving limited sustained contact with the public. *Id.* Finally, he found that the claimant had the ability to adapt adequately to work situations and changes that occur in the usual workplace with reasonable support, but is likely to perform more successfully in a consistent work environment with routine tasks, and is able to handle normal safety hazards and can use public transportation and travel independently in unfamiliar settings. *Id.* Upon reconsideration, on September 14, 2023, psychological consultant Joseph Mehr, Ph.D., affirmed and adopted Dr. Voss's findings without modification. Tr. 31, 107-108; 118-20.[4]

### **Analysis**

Plaintiff first challenges the ALJ's Step Five finding on the ground that he failed to adequately incorporate limitations relating to Plaintiff's mental impairment into the RFC finding. Doc. 15, pp. 5-11). Plaintiff further alleges that the ALJ erred in his assessment of the medical opinions on record. As explained below, the Court agrees that the ALJ failed to either adequately incorporate limitations relating to Plaintiff's mental impairments into the RFC or to substantially support the grounds for rejecting those limitations. Because remand is warranted on those grounds, the Court does not need to reach Plaintiff's challenges as to the ALJ's physical RFC assessment.

---

[4] The record also contains medical opinions regarding Plaintiff's physical limitations. Because the Court does not address Plaintiff's challenges to the ALJ's determination on her physical limitations, those medical opinions are omitted.

1.  **Mental Health Limitations (Social Interactions and Adaptivity)**

Plaintiff first faults the ALJ for disregarding Plaintiff's more severe reports of subjective symptoms and medical opinions in social interactions and adaptivity caused by her mental health conditions.

a.  **Assessment of Subjective Symptoms**

The ALJ rejected Plaintiff's and the third parties' reports of meltdowns, episodes of emotional lability, and panic or anxiety attacks up to four to five times daily, or "anytime she left her home." Doc. 15, p. 6; Tr. 26-27, 30. The Court finds no error.

An ALJ's assessment of a claimant's reports regarding the "intensity, persistence, and limiting effects of" her subjective symptoms will not be disturbed unless it is "patently wrong," meaning that it "lacks any explanation or support." *Weber v. Kijakazi*, No. 20-2990, 2021 WL 3671235, at *5 (7th Cir. Aug. 19, 2021) (citation and internal quotation marks omitted). At the same time, when that assessment rests on "objective factors or fundamental implausibilities rather than subjective considerations," such as the demeanor of the claimant, the court has "greater freedom to review" that assessment. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citation and internal quotation marks omitted). An ALJ must "adequately explain" whether the claimant's report of subjective symptoms is persuasive or not and discuss "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p). Although an ALJ does not need "to address every piece of evidence," some legitimate reason must be articulated to establish an "accurate and logical bridge from the evidence to [the] conclusion." *Clifford*, 227 F.3d at 872 (citation omitted).

Page **12** of **21**

Here, the ALJ pointed out that Plaintiff's and the third parties' reports that Plaintiff experienced anxiety attacks up to four to five times daily, or "anytime she left her home," were inconsistent with the record because Plaintiff's treatment providers "did not note the same." Tr. 30. Plaintiff argues this finding is wrong. She points to Dr. Thomas-Stagg, who conducted a consultative mental health examination of Plaintiff on October 16, 2018, and observed Plaintiff becoming upset and crying. Doc. 15, p. 6; Tr. 381-84. She also points to Nurse Practitioner Goods, who observed that Plaintiff was labile, anxious, and depressed three times in 2023-2024. Doc. 15, p. 6; Tr. 3583 (February 2024), 3632 (June 2023), 3638 (June 2023).

But the ALJ adequately supported his conclusion by citing Plaintiff's medical visits, noting no such findings. On March 23, 2023, at a consultative psychological evaluation, Dr. Elmudesi noted that Plaintiff had a genuine demeanor and appropriate appearance, did not appear to present with any active psychotic signs or symptoms, and her affect and mood were "somber to superficially bright." Doc. 29; Tr. 681. On June 1, 2023, at an initial evaluation with Mindful Care, her mental status examination was normal, with full affect and euthymic mood. Doc. 29; Tr. 3718-19. On August 21, 2023, Plaintiff reported that her mood was good, rated her depression as a 3/10, rated her anxiety as a 5-6/10, and was performing activities of daily living without difficulty. Doc. 29; Tr. 3691. On April 24, 2024, despite reporting being "very irritable" and "on edge," her mental status examination showed Plaintiff to be neat, appropriately dressed, with acceptable hygiene, cooperative, friendly, with a normal mood and full affect, and with no noted mental status abnormalities. Doc. 30; Tr. 3819. As for Dr. Stagg's observation of Plaintiff becoming upset and crying, this occurred in October 2018, years before the alleged disability onset of April 2022. Tr. 383-84. In addition, the ALJ explained that the reported intensity and frequency of Plaintiff's

symptoms were inconsistent with Plaintiff's testimony that her psychiatric medication helped her have "more good days than bad." Tr. 30; 60.

In sum, the ALJ sufficiently articulated some legitimate reason to establish an "accurate and logical bridge from the evidence to" his conclusion that the level of debilitation alleged in Plaintiff's and the third parties' reports was not supported by the record. *Clifford*, 227 F.3d at 872 (citation omitted). The Court rejects Plaintiff's invitation to reweigh the evidence. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

### b.   Assessment of Medical Opinions

Plaintiff further argues that the ALJ "impermissibly played amateur psychiatrist" by disregarding medical opinions showing more severe mental health impairments as to her capacity for social interaction and adaptivity to work changes. Doc. 15, p. 12-13. The Court agrees.

Both state-agency reviewing consultants concluded that Plaintiff had "social skill deficits, particularly in terms of social anxiety." Tr. 84, 95, 108, 119. Plaintiff "had the capacity for interactions with supervisors and coworkers in a work environment where social interaction is incidental to the work performed and could work in settings involving limited sustained contact with the public." Tr. 32, 84, 95, 107-09, 119-120. They also found that Plaintiff "had the ability to adapt adequately to work situations and changes that occur in the usual workplace *with reasonable support*." *Id.* (emphasis added). They noted, however, that Plaintiff "is likely to perform more successfully in a *consistent* work environment with routine tasks . . . is able to handle normal safety hazards and can use public transportation and travel independently in unfamiliar settings." *Id.* (emphasis added).

The ALJ concluded that specific mental residual functional capacity findings in those

opinions were "persuasive in intent but not the precise language used, as the consultants used vague language in describing the claimant's mental capacity for work activity." Tr. 32. However, the ALJ failed to explain what parts of those opinions were vague. In crafting Plaintiff's RFC and the hypothetical to the vocational expert, the ALJ found that Plaintiff could "respond appropriately to supervision and coworkers. She [could] tolerate *occasional* interactions with the public and [could] respond appropriately during the interactions. She [could] deal with *occasional* changes in a routine work setting." Tr. 20-21 (emphasis added). The Court is not convinced that the ALJ's reference to "occasional" interactions with the public adequately reflects Plaintiff's need for "limited sustained interaction with the public." *See Douglas H. v. Bisignano*, No. 24-CV-03364, 2025 WL 2483398, at *3 (N.D. Ill. Aug. 28, 2025) (rejecting an ALJ's nearly identical "translation" of the same limitations and explaining that "incidental" is qualitative while "occasional" is quantitative and allows for interactions "occurring up to one-third of the workday, or 2.33 hours," under the SSA's regulations). Further, the ALJ entirely omitted Plaintiff's need for "reasonable support" in order to adapt adequately to work situations and changes that occur in the usual workplace.

While an ALJ may depart from medical opinions suggesting more severe limitations, he must still provide at least a "minimal articulation" of his reasoning for doing so. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022). The regulations list several factors to be considered, but the ALJ needs only to discuss the most important ones: supportability and consistency. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). Here, the ALJ noted that the opinions of the state agency consultants were supported by citation to the Plaintiff's consultative psychological evaluation. Tr. 32. The ALJ also noted that consultatns' findings were consistent with Plaintiff's reports regarding her mental

limitations including difficulties working due to becoming upset easily, experiencing breakdowns limiting her ability to finish things, her need for reminders to take medication, her ability to prepare simple meals and complete household chores with encouragement, and her need to have someone with her when going out. Tr. 32. This shows that the ALJ found the opinions persuasive—not the opposite.

The only potential ground for rejecting the consultants' more severe limitations in Plaintiff's capacity for social interactions and adaptation to work changes was Plaintiff's testimony that her symptoms improved with psychiatric medication. Tr. 32. However, Plaintiff was already receiving psychiatric medication at the time the two state agency consultants issued their opinion. *See* Tr. 28 ("on April 9, 2021, [Plaintiff] reported that her symptoms were about the same after starting her new medication"), Tr. 29 ("On June 1, 2023, [Plaintiff] stated that . . .  her current medications were not fully helping her mental health symptoms). Plaintiff testified that taking medication had helped with her anxiety symptoms, in that she has more good days than bad, compared to experiencing symptoms "all week" if unmedicated. Tr. 60. She further testified that her medication helps her but makes her drowsy and tired. Tr. 64, 66-67. Nothing in Plaintiff's testimony shows a more recent change to her medication regimen that alleviated the severity of the limitations observed by the state-agency consultants in March and September 2023. Accordingly, the ALJ failed to build a logical breach between the record and his decision to reject the state consultant's more severe limitations in Plaintiff's capacity for social interaction and adaptivity to work changes.

Because the ALJ did not account in his RFC for the more severe opined limitations in those areas, and because he did not adequately explain the reasons for rejecting those limitations, remand

is warranted.

## 2. **Concentration, Persistence, and Pace**

Plaintiff further argues that the ALJ failed to sufficiently account for her limitations in concentration, persistence, and pace. Those limitations "refer[] to the abilities to focus attention on work activities and to stay on-task at a sustained rate." *Bruno v. Saul*, 817 F. App'x 238, 241–42 (7th Cir. 2020) (unpublished) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E(3)). The ALJ must incorporate a claimant's moderate limitations in concentration, persistence, and pace when drafting the RFC and the hypothetical for the vocational expert. *Id.* (citing *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)). The Seventh Circuit has repeatedly emphasized that an RFC determination limiting the claimant to performance of "simple tasks is 'generally' not enough to account for moderate" limitations in concentration, persistence, and pace. *Id.* (quoting *Crump*, 932 F.3d at 570). "The concern is that the restriction is used as a one-size-fits-all solution without delving into an individualized assessment of the claimant's specific symptoms." *Id.* (citing *Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020).

However, the Seventh Circuit has also repeatedly affirmed RFC determinations that restrict the claimant to simple, routine, and repetitive tasks despite a finding of moderate limitations in concentration, persistence, and pace, where there is substantial evidence in the record supporting such a determination. *See Recha v. Saul*, 843 F. App'x 1, 3-5 (7th Cir. 2021) (where the ALJ relied on state agency opinions that the plaintiff could maintain attention for two hours at a time and persist at simple tasks over eight- and forty- hour periods and there was no medical opinion that recommended limitations beyond those included in the RFC); *Lockett v. Saul*, 834 F. App'x 236 (7th Cir. 2020) (where the ALJ relied on testimony from a medical expert who expressly stated

Page **17** of **21**

the plaintiff could perform simple, repetitive, routine work); *Bruno*, 817 F. App'x 238 (where the

ALJ explained in detail that she limited the plaintiff to simple tasks based on evidence that the

plaintiff's CPP struggles arose during complex undertaking, such as long tests but not during

simple, repetitive tasks, such as the plaintiff's job at a bakery); *Burmester*, 920 F.3d 507 (where

the ALJ relied on a narrative report from a state agency consultant who opined the plaintiff's

limitations in CPP were manageable and the ALJ incorporated the consultant's findings in his

hypothetical to the VE); *Dudley v. Berryhill*, 773 F. App'x 838 (7th Cir. 2019) (where the ALJ

posed a hypothetical to the VE that adequately encompassed the plaintiff's restrictions in CPP and

which went beyond those restrictions identified by the state agency consultants, who opined the

plaintiff could perform simple, routine, and repetitive work activities); *Simons v. Saul*, 817 F.

App'x 227 (7th Cir. 2020) (where the ALJ's hypothetical to the VE were consistent with limitations

expressed in the medical record with regard to the plaintiff's CPP).

Here, both state agency consultants who provided an opinion for the timeframe after the

alleged disability onset concluded that Plaintiff

> could understand and remember simple but not detailed or complex instructions, had the concentration and ability to carry out simple tasks requiring routine judgment (*e.g.*, few variables, assembly work), *would require a simple, direct supervision for routine work tasks*, was capable of being punctual and maintaining a routine work schedule, and could sustain the persistence and pace for such tasks as ordinarily expected in a common work setting over a workday with customary breaks.

Tr. 32, 83-84, 94-95, 107-09, 119-120 (emphasis added).

The ALJ found that specific mental residual functional capacity findings in those opinions

were "persuasive in intent but not the precise language used, as the consultants used vague

language in describing the claimant's mental capacity for work activity." Tr. 32. Accordingly, in

crafting Plaintiff's RFC and the hypothetical to the vocational expert, the ALJ did not incorporate the state-agency reviewing consultants' language indicating that Plaintiff "require[d] a simple, direct supervision for routine work tasks" or any equivalent language. Tr. 32. The only limitation that the ALJ included in the RFC regarding Plaintiff's concentration was that she "could understand, carry out, make judgments regarding, and remember simple instructions."[5] Tr. 22. While the ARJ also noted that "Plaintiff [could] respond appropriately to supervision and coworkers," this language does not reflect the need for supervision over routine work tasks.

As stated above, to reject the psychologists' opinions that Plaintiff needed "simple, direct supervision for routine work tasks" limitation, the ALJ needed to at least "minimally articulate" his reasoning based on the regulatory factors. *Grotts*, 27 F.4th at 1276. The ALJ stated that some of the consultants' language was vague. Tr. 32. Yet, he failed to explain the exact language that was vague. Specifically considering the omitted limitation that Plaintiff "would require a simple, direct supervision for routine work tasks," there is nothing inherently vague in it. In fact, this or similar language has been used by ALJs in describing a claimant's residual functional capacity and forming hypothetical questions to vocational experts. *See, e.g.*, *Smithee v. Soc. Sec. Admin.*, No. 3:17-CV-175-BD, 2018 WL 3132603, at *1 (E.D. Ark. June 26, 2018) (the claimant "could work where supervision is simple and direct"); *Smith v. Comm'r, SSA*, No. 4:18-CV-274, 2019 WL 4564832, at *2 (E.D. Tex. Sept. 20, 2019) ("few work-related decisions, and simple direct

---

[5] The Court notes that the mere finding that "Plaintiff could understand, carry out, make judgments regarding, and remember simple instructions" is not inconsistent with the finding of moderate limitations in Plaintiff's concentration, persistence, and pace because the psychiatric consultants specifically found that Plaintiff can "understand and remember simple but not detailed or complex instructions." Tr. 83, 94, 107, 118; *see Bruno*, 817 F. App'x at 242ff (upholding similar language in RFC of a claimant with moderate limitations in concentration, persistence, and pace because the was a specific finding that the claimant struggled to concentrate only when the assignment at hand was a complex one).

supervision); *Elaina R. v. Kijakazi*, No. 6:21-CV-1683-SI, 2023 WL 6213295, at \*3 (D. Or. Sept. 25, 2023) (claimant "is able to tolerate brief superficial interaction with the public, and simple, direct supervision on a constant basis").

The ALJ did point to Plaintiff's testimony that her symptoms improved with psychiatric medication, but this language says nothing about Plaintiff's limitations in concentration and the need for direct supervision. The ALJ concluded that Plaintiff's "concentration problems limited the complexity of the instructions she [was] able to carry out consistent with a limitation to simple instructions." Tr. 32-33. But the Seventh Circuit has repeatedly rejected the idea that the "instruction for 'simple tasks'" is enough to account for moderate limitations in concentration, persistence, and pace where there is no individualized assessment of the claimant's specific symptoms." *Bruno*, 817 F. App'x 238 at 241–42 (citing *Martin*, 950 F.3d at 373-74).

Accordingly, the ALJ erred in failing either to adequately support his rejection of the opined limitation or to adequately incorporate it into the RFC and the hypothetical presented to the vocational expert. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) ("both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record"). The error was not harmless because accepting the psychologists' opinions could have changed the vocational expert's testimony and the ALJ's determination of available jobs. *See Mary W. v. Bisignano*, No. 25 C 4427, 2026 WL 252560, at \*2 (N.D. Ill. Jan. 30, 2026) (finding that the ALJ committed a reversible error when he found that psychological consultants' opinion was generally persuasive but rejected the limitation of "simple, direct supervision for routine work tasks" solely on the ground that the claimant was able to take public transportation).

Because remand under those grounds is warranted, the Court does not need to reach Plaintiff's arguments that the ALJ disregarded her headaches as a symptom of mental impairment and erred in his physical RFC assessment. On remand, the ALJ should consider these matters afresh, taking into account the entire record.

### Conclusion

The Commissioner's final decision denying Plaintiff's application for disability insurance benefits and supplemental security income is **REVERSED** and **REMANDED** to the Commissioner for rehearing and consideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: March 16, 2026**

*s/  Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**